UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
SETH R. LESSER,                                          :    No. _____
                                                         :
    Plaintiff,                                          :
                                                         :
    v.                                                   :
                                                         :    COMPLAINT 06 CV 6053
INDEPENDENCE BLUE CROSS,                                 :
                                                         :    JURY DEMAND
    Defendant.                                           :
---------------------------------------------------------x

    Plaintiff, Seth R. Lesser, by and through his attorneys Locks Law Firm, PLLC, for his Complaint alleges the following upon information and belief except as to the allegations concerning himself, as follows:

### NATURE OF THE ACTION

    1.    This is a suit brought to recover wrongfully denied insurance claims resulting medical necessary surgery that Plaintiff, a health insured of Defendant Independence Blue Cross ("Defendant" or "Independence"), had, and which claims Defendant insurance company has wrongfully refused to pay in whole or part in violation of its duties under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.* or, in the alternative, in violation of Defendant's duty of good faith owed to Plaintiff.

### PARTIES

    2.    Plaintiff Seth R. Lesser is a resident and citizen of the State of New York, residing in Westchester County. He has a home address of One West Place, Chappaqua, New York 10514. At all times relevant herein Plaintiff was an insured of the Defendant pursuant to a PPO

insurance policy, group number 15418C.

3. Defendant Independence Blue Cross Defendant, is a Pennsylvania corporation with a principal place of in Philadelphia, Pennsylvania. It is a health insurance company, providing health insurance. It conducts substantial and continuous business within this judicial district. At all relevant times, Defendant was acting and/or failing to act individually and by and through their its contractors, employees and servants, all of whom were acting within the scope of their authority.

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. § 1331 as certain of Plaintiff's claims are based upon the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

5. Venue is founded upon 28 U.S.C. §1391(b) inasmuch as Plaintiff resides in this District and a significant proportion of the acts at issue in the case and their consequences all occurred or are felt within this District.

## FACTUAL BACKGROUND

6. At all relevant times, Plaintiff was employed by the Locks Law Firm PLLC, to whose employees Defendant was a health insurer, providing coverage by means of a health plan, "The Personal Choice Health Benefits Program" (the "Plan") (Exhibit A hereto). The group number of the plan was 611404, under the name Greitzer & Locks (the former name of Locks Law Firm PLLC).

7. Starting on or about April 22, 2005, Plaintiff began experiencing severe sciatic nerve pain in his lower left shooting down his left leg. After several visits to doctors it was determined that he was suffering from an severe spinal disc herniation and surgery was indicated

2

as medically appropriate and necessary.

8. The Plan permitted him to use out-of-network medical providers, and Plaintiff determined to use, as is here relevant, Dr. Patrick O'Leary, a particularly well-known and able surgeon in New York City to perform the medical necessary (a determination not here challenged) laminectomy.

9. Dr. O'Leary's office obtained, as required by the Plan, precertification to have the surgery performed by Dr. O'Leary at The Hospital for Special Surgery.

10. The operation was successfully performed on June 22, 2005 at The Hospital for Special Surgery in New York City.

11. Shortly thereafter, Plaintiff began submitting claims for payment or reimbursement of his medical care providers as he received their bills.

12. Almost invariably, and starting a pattern that has extended down to the present, Independence responded to virtually every request for payment and/or reimbursement with the statement that "[d]ue to circumstances beyond our control, additional review time is required to finalize your claim." An illustrative example of such a "Notice" is attached as Exhibit B hereto. Apparently, the circumstances of each (or nearly each) claim was effected by the unidentified "circumstances beyond" Independence's "control" because each (or nearly each) claim was responded to with such a "Notice."

13. When actual responses were obtained from Independence, they were, quite often, denials or partial denials. The denials verged on the incomprehensible, or at least the materially incomplete, because while they stated what the amount of the charge from the medical provider was, they provided no reason as to how the all-important "Covered Benefit Amount" was

3

reached. For example, Plaintiff's claim number IGO7220500197 was for the charge by the surgeon, Dr. O'Leary, for the actual laminectomy itself. Dr. O'Leary billed the surgery in the amount of $12,500. The claim denial states that Plaintiff's responsibility for the amount charged was "$273.39" and that the "Covered Benefit Amount" was $1,094.73. A copy of this claim denial is attached as Exhibit C hereto. How that "Covered Benefit Amount" was determined is not set forth.

14. When Plaintiff subsequently called to find out how a charge of "$12,500" was reduced to a payment of just $1,094.73 and where the "Covered Benefit Amount" was derived, inasmuch as the medical care provider was then (and continues today) to seek payment of the full amount, he was informed by a person in Independence's claims department that the amount was derived by the reasonable and customer charge for the procedure being $1,368 (against which the Plaintiff was responsible for a 20% co-payment). When Plaintiff expressed incredulity at Independence's position that a complex laminectomy could be performed, much less performed in New York City, for $1,368, he was informed that was the allowance. When he requested the basis for how that allowance could be a reflection of a reasonable and customary charge for this procedure, he was not provided with anything. Nor, despite repeated requests thereafter for support of that determination, has it ever been provided.

15. In actuality, the allowance of $1,368 is not a reasonable and customary charge for the operation that Plaintiff had, and, instead, is an arbitrary and capricious amount that Independence has set as a "Covered Benefit" so as to avoid paying its customers, including Plaintiff, for the costs of their procedures due to them pursuant to the provisions of their insurance policies, in Plaintiff's case, the Plan.

16. Indeed, nearly every "Covered Benefit" amount set forth by Independence in its claim denials is an arbitrary and capricious amount, such as an a $19.91 allowance for a surgical pathology (Claim No. IG07140500106 – pathologist's charge of $190).

17. Plainly, Independence's hope is that by setting artificially low coverage benefits, it will cause medical care providers to accept less in reimbursement and/or to have its insured, like Plaintiff, pick up the difference or some part of the difference so that the providers are satisfied.

18. Whatever its hope, however, the denial of benefits pursuant to artificially low "allowances" is in violation of Independence's duties owed to its insured under the provisions of the Plan and applicable law.

19. This is not the only way in which Independence has failed to comply with its legal duties owed to Plaintiff.

20. On repeated occasions, Plaintiff has requested from Independence copies of all of his claims, and the responses thereto, for the claims he made during 2005. Independence has never provided such requested information, for which Plaintiff is certainly entitled. Instead, and despite reassurances in writing that he would be provided with this information, he received incomplete computer print-outs of some - but apparently never all – of the claims. Accordingly, even today, Plaintiff is unsure and unclear as to what is the status of all of his claims and is unable to determine which, if any, medical providers may hereafter proceed against him for payment of the medical servers they provided him.

21. Plaintiff also requested on a number of occasions, a complete copy of his file. He particularly did so in connection with his appeals within Independence's appeals process. Only after he had completed both levels of administrative appeals within Independence of claims

denials, was he provided with an (apparent) copy of his file. Not only was it too late for him to use in trying to appeal Independence's determinations within Independence itself, but what he was sent was a redacted file, redactions for which Independence has not right to make since it is Plaintiff's own file. Requests for a non-redacted file have been ignored by Independence, which further evidences its lack of interest in complying with its duties to Plaintiff.

22.   Further, when Plaintiff initially brought a First Level Administrative Appeal of his claims denial in November, as required and provided for under Independence's rules, he was assigned an individual to represent his interests at that Appeal. He asked that individual (a Ms. Gwen Mattison-Carter) to obtain, among other things, an explanation of how Independence determines what are "reasonable and customary charges," what are the "reasonable and customary" charge for the procedural codes which Independence denied or reduced Plaintiff's claims, what was the basis for Independence's position that the "reasonable and customary" charges for each of the codes in the appealed claims was what were "reasonable and customary" charges for codes in New York City, and a copy of his file and all claims. His supposed representative representing his interests failed to respond to his requests in their entirety and failed to provide any of the requested information, much less why it was not provided.

23.   When Plaintiff's First Level Administrative Appeal was denied, the denial of that appeal entirely failed to comply with Independence's own procedures for appeals. For example, the determination is supposed to specifically inform the claimant of the "benefit provision/guideline/protocol/clinical rationale used" to make the decisions at issue. This was ignored and not such information was provided. Other provisions of the denial were entirely incomprehensible because they failed to specify what claims at issue they related to.

24. To avoid being left in the dark while he pursued a Second Level Administrative Appeal, Plaintiff again requested information as to his claims, his file, what were the bases for Independence's determinations and that of First Level Administrative Appeal. *See* Exhibit D hereto (letter from Plaintiff to Independence dated January 30, 2006, with attachments.) In further disregard of his rights and the duties it owed him, none of that information was provided to him prior to the time of the Second Level Administrative Appeal (although he was sent, on the eve of that Appeal hearing, an incomplete print-out of his claims, a print-out that, in fact, did not even include the most disputed claims at issue between Plaintiff and Independence, the bills of Dr. O'Leary.

25. Not surprising, the Second Administrative Appeal denied Plaintiff's claims (although, oddly it apparently agreed to waive pre-certification penalties for some claims where no penalties should have been assessed). Notably, and as further evidence of Independence's failure to abide by it duties to Plaintiff and its continued failure to adhere even to its own appeal rules, that determination again failed to provide the specific "benefit provision/guideline/protocol/clinical rationale used" to make the decisions at issue and it also mischaracterized Plaintiff's position on the denial of Dr. O'Leary's bills as due to the "complexity" of the surgery when, in actuality, Plaintiff's position was that the reasonable and customary charge amounts were themselves unreasonable.

26. Repeatedly throughout the many months of inquiries and appeals, Plaintiff informed Independence that its actions appeared to be in bad faith in a violation of the duties it owed him and that he was having to expend a great deal of time and effort in addressing Independence' actions.

27. To date, Plaintiff has been threatened with collection actions on his owed monies to his medical care providers (*see* Exhibit D at Tab D). In other instances, he has had to spend thousands of dollars to pay the medical providers bills as a result of Independence's wrongul failure to pay his claims.

28. Plaintiff has performed all actions required by him under the terms of the Plan.

29. Plaintiff has pursued all available internal appeals, as set forth above, even though, at each appeal level Defendant failed to follow its own procedures and rules and even though Defendant failed to provide Plaintiff with the materials he sought in order to be able to prepare for and establish his position at the appeals. Notwithstanding its own failures to follow the requirements of the Plan procedures and rules and its own rules and notwithstanding the terms of the Plan, Defendant unreasonably and arbitrarily continued to deny Plaintiff's claims.

30. Defendant's denials of Plaintiff's Claims were improper, arbitrary and capricious and constituted an abuse of discretion, were contrary to Independence's obligations under the Plan, and/or were made in demonstrated bad faith.

31. Plaintiff is entitled to declaratory, injunctive and restitutionary relief, and/or damages as result of Defendant's wrongful denials of his claims.

### COUNT I

### Violation of ERISA

32. Plaintiff hereby incorporates paragraphs 1 through 31 as fully set forth herein at length.

33. At all relevant times, Seth R. Lesser was a Participant and/or Beneficiary of the Plan, as those terms are defined by ERISA, 29 U.S.C. § 1002.

34. At all relevant times, Defendant was the Administrator and/or Fiduciary of the Plan, as those terms are defined by ERISA, 29 U.S.C. § 1002.

35. Defendant's improper, arbitrary, capricious and unreasonable conduct consisted of, inter alia, reducing the amounts of claims that it paid to unreasonable and artificially low amounts; failing to comply with Plan procedures; failing to adequately and clearly notify Plaintiff of the reasons for denying his claim; interpreting the Plan inconsistent with the goals of the Plan; interpreting the Plan's provisions in such a way to render the Plan meaningless or materially worthless; failing to provide Plaintiff with information to which he was entitled; failing to follow its own appeals rules and procedures; failing to provide Plaintiff with the means to engage in meaningful internal appeals; failing to reverse an appeals determination where the initial determination materially failed to comply with its own appeals rules and procedures; and otherwise engaging in conduct violating ERISA.

36. As a proximate result of the aforementioned actions of Defendant, Plaintiff has been threatened with collection actions, has been compelled to spend thousands of dollars in monies out of pocket to which he was entitled under the Plan, all in violation of ERISA, and particularly Section 1132(a)(1)(B), has been left in a state of uncertainty as to the status of his claims, and has not been provided with information to which he is entitled.

37. As a proximate result of the aforementioned actions of Defendant, Plaintiff has been forced retain counsel on his behalf and to expend time and effort as counsel and to incur costs.

38. Plaintiff exhausted the administrative remedies available to him under ERISA.

39. Plaintiff is entitled to the declaratory, injunctive and monetary relief set forth

below, as well as costs of suit and attorneys fees and costs.

## COUNT II

### Breach of The Duty of Good Faith

40. Plaintiff hereby incorporates paragraphs 1 through 31 as fully set forth herein at length.

41. By virtue of the actions set forth above vis-a-vis Plaintiff, including, but not limited to: reducing the amounts of claims that it paid to unreasonable and artificially low amounts; failing to comply with Plan procedures; failing to adequately and clearly notify Plaintiff of the reasons for denying his claim; interpreting the Plan inconsistent with the goals of the Plan; interpreting the Plan's provisions in such a way to render the Plan meaningless or materially worthless; failing to provide Plaintiff with information to which he was entitled; failing to follow its own appeals rules and procedures; failing to provide Plaintiff with the means to engage in meaningful internal appeals; failing to reverse an appeals determination where the initial determination materially failed to comply with its own appeals rules and procedures; and otherwise engaging in conduct contrary to the interests of Plaintiff, Defendant has failed to comply with the duty of good faith it owed to Plaintiff.

42. As a proximate result of the aforementioned actions of Defendant, Plaintiff has been threatened with collection actions, has been compelled to spend thousands of dollars in monies out of pocket to which he was entitled under the Plan, has been left in a state of uncertainty as to the status of his claims, and has not been provided with information to which he is entitled.

43. As a proximate result of the aforementioned actions of Defendant, Plaintiff has

been forced retain and act as counsel on his behalf and to expend time and effort as counsel and to incur costs.

44. Plaintiff is entitled to the declaratory, injunctive and monetary relief set forth below, as well as costs of suit and attorneys fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award the following relief:

(a) For declaratory relief finding that Defendant's actions have violated ERISA and/or the duties it owed Plaintiff;

(b) For injunctive relief requiring Defendant hereafter to comply with the terms of its legal obligations vis-a-vis Plaintiff, including hereafter not to reduce claims based on an artificially reduced "reasonable and customary" allowance, to provide Plaintiff with a complete copy of his claim file and copies of all his claims;

(c) For restitutionary relief and/or damages for the claims which it wrongfully reduced;

(d) For pre- and post-judgment interest;

(e) For costs and disbursements incurred in connection with this action, including, if reasonable attorneys' and experts' fees; and

    (f)    For such other and further relief as the Court deems just and proper.

DATED: August 2, 2006

*[signature]*

Steven P. Knowlton (SK-2429)
Seth R. Lesser (SL-5560)
Andrew P. Bell (AB-1309)
LOCKS LAW FIRM PLLC
110 East 55th St., 12th Floor
New York, NY 10022
(212) 838-3333 Telephone
(212) 838-3735 Facsimile
www.lockslaw.com

ATTORNEYS FOR PLAINTIFF